**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| SANDRA ELAINE CANTU, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 3:14-CV-302-PRC |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Sandra Elaine Cantu

on February 13, 2014, and a Social Security Opening Brief of Plaintiff [DE 13], filed on June 20,

2014. This matter became fully briefed on October 10, 2014. Plaintiff challenges the Social Security

Administration's determination that she is not disabled under the Social Security Act.

**I. Background**

On February 23, 2011, Plaintiff filed an application for Disability Insurance Benefits (DIB)

under Title II of the Social Security Act, alleging that she'd been disabled since March 15, 2009. Her

claim was denied initially and upon reconsideration. She then sought a hearing with an

Administrative Law Judge (ALJ). A hearing took place on August 9, 2012. On August 31, 2012, the

ALJ issued a written decision denying Plaintiff's claims for disability benefits, making the following

findings.

> 1. The claimant last met the insured status requirements of the
>    Social Security Act on December 31, 2010.
>
> 2. The claimant did not engage in substantial gainful activity
>    during the period from her alleged onset date of March 15,
>    2009, through her date last insured of December 31, 2010.
>
> 3. Through the date last insured, the claimant had the following
>    severe impairments: fibromyalgia, hypothyroidism,

allergies/asthma, hypertension, and depression.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to lift/carry 10 pounds occasionally, less than 10 pounds frequently; stand/walk 2 hours total, 15 minutes continuously; sit 6 hours, 1 hour continuously; can remain at the workstation and on task despite positional changes; never climb ladders, ropes, or scaffolds; occasionally climb ramps/stairs; balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to fumes, odors, dusts, and gases; avoid all exposure to workplace hazards such as dangerous moving machinery and unprotected heights; avoid concentrated exposure to extreme cold and heat; she can understand, remember, and carry out simple instructions and work-like procedures; concentrate long enough to complete simple tasks in a timely manner; and sustain a flexible or goal-oriented pace.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born in 1962 and was 48 years old, which is defined as a younger individual age 45–49, on the date last insured.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 15, 2009, the alleged onset date, through December 31, 2010, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On February 13, 2014, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Disability Standard

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not

disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## IV. Analysis

Plaintiff argues that the ALJ made errors in assessing her credibility and also failed to properly weigh the opinion evidence of two of her treating physicians. These errors, she contends, mandate that her case be remanded for further consideration or, alternatively, that the denial of benefits be reversed outright. The Court considers each issue in turn.

## A. Credibility

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant says she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). And "this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738.

Nevertheless, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013)

(citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)). This Court is not bound by the finding if it "is based on errors of fact or logic." *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (citations omitted). Further, "if the determination rests on objective factors or fundamental implausibilities rather than subjective considerations like demeanor, [the court has] greater freedom in reviewing the decision." *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) (internal quotation marks and citation omitted) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

Here, in explaining why she found Plaintiff to be less than fully credible, the ALJ pointed out that, while Plaintiff clearly had fibromyalgia, she had had it for a long time and had worked with it in the past. The ALJ further noted that Plaintiff testified that she had "stopped working because of a conflict with her boss rather than because of her allegedly disabling impairments" and that she didn't file for disability status until two years after the alleged onset date, though it appeared that her condition may have worsened after the date last insured. (AR 27). And, though it's unclear what it has to do with Plaintiff's credibility, the ALJ also mentioned that Plaintiff had reported in March 2011 that she could lift twenty pounds, which is greater than the amount provided for in the ALJ's RFC determination.

The one-sentence summary of why Plaintiff was fired mischaracterizes the evidence. In the ALJ's account, it was a conflict with her boss *rather than* Plaintiff's medical issues that led to her losing her job. There was a conflict, but the evidence (Plaintiff's testimony and a contemporaneous medical record) shows that this conflict was not, as the ALJ said, somehow independent of her symptoms. She lost her job because she was getting behind in her work. And she got behind because she felt worn out and foggy *as a result of* her fibromyalgia and medications. The Commissioner concedes that holding this against Plaintiff was an error, but argues that it is harmless.

7

The Court cannot agree. Not only is the error itself significant, but it also undermines the logical integrity of the ALJ's conclusion that Plaintiff's past work with fibromyalgia made her current claims less than fully credible. Contrary to the ALJ's conclusions, the circumstances of her firing suggest that her condition had in fact worsened and that this worsening occurred during the insured period as well as after.

A finding of harmless error is appropriate when the decision is "overwhelmingly supported by the record" and the Court has "great confidence" that the same result would have been reached absent the errors. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Here, the ALJ's errors undermine the very heart of her credibility analysis. Perhaps she would have reached the same conclusion even if she hadn't made these mistakes—but perhaps not. This Court is not in a position to decide, and a finding of harmless error is therefore unwarranted.

None of this is to say that Plaintiff was, in fact, credible or that the ALJ was required to believe the story about how she got fired. Rather, the problem is that the ALJ failed to provide an accurate logical bridge in support of her credibility finding. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (citations omitted). Remand is thus required.[1]

## B. Opinion Evidence

The Court considers next whether the ALJ's analysis of the opinions in the record was supported by substantial evidence and followed the applicable law. The ALJ gave little weight to the opinions of two of Plaintiff's treating sources: Dr Allen, a family practitioner, and Dr. Lockwitz, a rheumatologist. Plaintiff contends that the ALJ didn't follow the applicable regulations in making these decisions.

---

[1] As for the statement regarding Plaintiff's lifting ability, it should either be moved on remand so that it is clear that it is not relevant to the credibility determination, or its relevance should explained.

The so-called treating physician rule "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is well-supported by acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence." *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) (citing 20 C.F.R. § 404.1527) (internal quotation marks omitted). If an opinion fails to meet either of these criteria, the ALJ must decide what weight to give it by considering "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R § 404.1527; *Bauer v. Astrue*, 532 F.3d at 608; *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)). The Court considers the ALJ's discussion of these two physicians in turn.

### 1. Dr. Allen

Once Plaintiff embarked on her quest for benefits, her attorney sent Dr. Allen a questionnaire regarding her limitations. Dr. Allen answered the questionnaire on December 5, 2011, explaining that Plaintiff couldn't even do sedentary work due to her severe fatigue with excessive general pain and tender points. He also noted that Plaintiff needed to get up and move every hour and couldn't sit down again for another twenty minutes. He said that pain, fatigue, or other symptoms would be severe enough to frequently interfere with her attention and concentration.

As he noted in his questionnaire, Dr. Allen had treated Plaintiff from April 2010 through December 2011. (He also stated that the restrictions he thought were present dated back to April 2009, a year before he began treating Plaintiff.) The ALJ gave this opinion little weight, explaining that it was not supported by the treatment evidence from the insured period. Those records note that Plaintiff complained of pain and had been prescribed medication for fibromyalgia, hypothyroidism,

and hypertension, but, the ALJ concluded, these records amounted to medication management with no referrals and did not support the severe functional limitations of the questionnaire. In fact, the ALJ pointed out, Dr. Allen's own treatment notes state that he had encouraged Plaintiff to exercise more.

Plaintiff contends that the ALJ approached the issue wrongly since findings of pain, fatigue, and tender points are all one would expect to see with someone who suffers from disabling fibromyalgia.[2] This is not what the law requires. "It is not enough to show that she had received a diagnosis of fibromyalgia with a date of onset prior to the expiration of the insured period, since fibromyalgia is not always (indeed, not usually) disabling." *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (citing *Sarchet*, 78 F.3d at 307). Plaintiff points to many records supporting Plaintiff's diagnosis of fibromyalgia and her general complaints of pain and fatigue. She also points to an August 26, 2009 medical record that noted new pain in her knee. This evidence deals with pain, fatigue, and medications, not with limitations on her ability to function. It does not undermine the ALJ's conclusion that the record did not support the specific and very limiting restrictions put forward by Dr. Allen.

Plaintiff also objects that the conclusions of treating chiropractor Brehany did not amount to a substantial contradictory opinion. There is no need to discuss this since it relates to whether Dr. Allen's opinion should have been granted controlling weight under the treating physician rule. As just explained, the decision to not give controlling weight could thus stand regardless of whether

---

[2] This summary of what one needs to get a diagnosis of fibromyalgia (whether disabling or not) is, strictly speaking, inaccurate. There is no fixed standard, but the rule of thumb is that one must have tenderness at least eleven of eighteen specific trigger points, not just diffuse pain or some tender spots. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). But, as the ALJ noted, Plaintiff certainly does have fibromyalgia, and she exhibited tenderness at all eighteen trigger points.

Brehany's opinion was in fact contradictory, which, it's worth noting, the ALJ did not discuss in explaining why she chose to give Dr. Allen's opinion little weight. This Court is confident that the ALJ would have made the same finding regardless of how she evaluated Brehany's opinion.

Plaintiff contends that, regardless of whether she had to give Dr. Allen's opinion controlling weight, the ALJ failed to rightly consider the factors listed in 20 C.F.R § 404.1527. Her contention is not that the ALJ didn't consider the factors, but that an accurate consideration of the factors would have come out in her favor. The objection fails. Decisions discounting a treating physician's opinion stand as long as the ALJ considered the factors and her reasons were "minimally articulated." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (internal quotation marks and citations omitted). This is a very deferential standard. *Id.* The ALJ's reasoning, which focuses on the lack of support in the record for Dr. Allen's opinion, meets this "lax" threshold. *Id.*

A few things should nevertheless be clarified on remand. First, discussion of Dr. Allen's recommendation that Plaintiff increase her exercise should be explained more fully. Exercise is part of a comprehensive treatment course for fibromyalgia. *See Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1096 (E.D. Wis. 2001). The exercise Dr. Allen had in mind might have been, as Plaintiff suggests, something very low-impact that would not undermine the opinions he gave in the questionnaire. Second, should the ALJ's conclusions regarding credibility change on remand, the discussion of Dr. Allen's opinion should likewise be adjusted if appropriate.

### 2. Dr. Lockwitz

As with Dr. Allen, Plaintiff's attorney sent treating rheumatologist Dr. Lockwitz a questionnaire regarding her limitations. Dr. Lockwitz responded on November 15, 2011, explaining that Plaintiff suffered from fibromyalgia and had severe chronic muscle and joint pains for the past

11

two years at least, rendering her unable to work. He noted that she had told him about losing her job and that she had rated her pain as an 8/10 that became worse when doing activities of daily living and was not helped by medications.

The ALJ gave this opinion little weight, explaining that Dr. Lockwitz had only evaluated Plaintiff once, in 2008, and his opinion was therefore based entirely on Plaintiff's own reports. She also explained that the opinion was conclusory, not functionally specific, and inconsistent with, and unsupported by, the record as a whole.

Plaintiff raises a handful of objections. In the first place, she points out that Dr. Lockwitz had seen Plaintiff two times, not, as the ALJ stated, only once. She also argues that there is no indication that Dr. Lockwitz based his opinion "entirely" on Plaintiff's own reports. (AR 29). She further contends that the ALJ did not point to any contradictory evidence or evidence that Dr. Lockwitz failed to base his opinions on appropriate medical findings.

Plaintiff is correct that the ALJ misstated the number of times Plaintiff saw Dr. Lockwitz. The Commissioner admits this, but argues the error is harmless. This case is being remanded anyway, and there is therefore no need to consider the harmless-error argument. On remand, the ALJ should correctly state the number of times Dr. Lockwitz saw Plaintiff. Further, the conclusion that Dr. Lockwitz's opinion was based "entirely" on Plaintiff's own reports does not necessarily follow from Dr. Lockwitz having only seen Plaintiff twice. While it does appear that Dr. Lockwitz relied heavily on Plaintiff's subjective reports, the analysis as written is illogical, and the ALJ should clarify it on remand.

The ALJ did not err, however, in concluding that Dr. Lockwitz's opinion was unsupported. Dr. Lockwitz pointed to plenty of evidence supporting a diagnosis of fibromyalgia, but did not cite

12

any objective medical evidence to back up his acceptance of Plaintiff's subjective complaints about her limitations. And as discussed above, Plaintiff has not brought forward evidence directly supporting limitations of the sort that would keep her from working. Likewise, the ALJ did not err in describing the opinion as conclusory and lacking specific limitations. Indeed, Dr. Lockwitz admitted that he didn't have enough information to make accurate conclusions about any particular limitations.

Plaintiff argues in the alternative that the ALJ did not consider the factors listed in 20 C.F.R § 404.1527 in evaluating Dr. Lockwitz's opinion. Review of the decision, however, reveals no errors in the ALJ's discussion beyond those discussed above. The ALJ discussed the type of treatment, considered the supportability and consistency of the opinion, and noted that Dr. Lockwitz was a rheumatologist.

Finally, as above, the Court notes that, should Plaintiff be deemed more credible on remand, this might change how her subjective complaints—and thus the medical opinions relying on those complaints—are weighed.

## C. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord*, 631 F.3d at 415 (7th Cir. 2011) (citing *Briscoe*, 425 F.3d at 356)). As is evident from the discussion above, remand, not an immediate award of benefits, is required.

## V. Conclusion

Based on the foregoing, the Court **GRANTS** the relief sought in the Social Security Opening

Brief of Plaintiff [DE 13], **REVERSES** the final decision of the Commissioner of Social Security,

and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 23rd day of January, 2015.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record

14